**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GORDON STEWART,

      Petitioner,                      Civil No. 2:09-CV-11664
                                        HONORABLE NANCY G. EDMUNDS
v.                                    UNITED STATES DISTRICT JUDGE

LLOYD RAPELJE,

      Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO**
**APPEAL IN FORMA PAUPERIS**

      Gordon Stewart, ("petitioner"), presently confined at the Carson City Correctional

Facility in Carson City, Michigan, has filed a petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254, in which he challenges his conviction for second-degree murder,

M.C.L.A. 750.317, operating a motor vehicle under the influence of intoxicating liquor

causing death, M.C.L.A. 257.625(4), operating a motor vehicle while license suspended or

revoked causing death, M.C.L.A. 257.904(4), possession of an open container of alcohol

in a moving vehicle, M.C.L.A. 257.624a, and being a fourth felony habitual offender,

M.C.L.A. 769.12.  For the reasons that follow, the petition for writ of habeas corpus is

DENIED.

**I. Background**

      Petitioner was convicted of the above offenses following a jury trial in the Macomb

County Circuit Court.

      On September 16, 2005, Lara Rutan was driving northbound on Hayes Road in

1

Clinton Township, Michigan.  Petitioner was driving southbound on the same road in a dump truck that he had stolen.  Petitioner swerved in the road before crossing over the center lane and colliding head on with Ms. Rutan's vehicle.  The victim died instantly from the collision. (Tr. Vol. I, pp. 122-23).

Two of petitioner's acquaintances testified that they met up with petitioner at a bar on the day of the accident.  Petitioner had been drinking and appeared intoxicated. (Tr. I, pp. 155-59; 172-74).

Sometime after leaving the bar, petitioner went to a cement yard in Roseville, Michigan and stole a red dump truck from the owner. (Tr. Vol. II, pp. 8-12).

Matthew Helsel was driving with his wife southbound on Hayes Road prior to the collision.  At the time of the collision, it was drizzling rain and it was it was getting dark. Helsel testified that the truck that petitioner was driving swerved in front of their car.  Mr. Helsel testified that he observed the truck swerve at least three times from the left lane, with the truck actually swerving completely into the center lane the first time.  Helsel asked his wife to pass the truck, because he feared that the driver was intoxicated.  Helsel estimated that their car was traveling at about 35-40 miles per hour, but could not estimate how fast the truck was going.  Although Helsel testified at the preliminary examination that he did not believe that the truck was speeding, at trial he testified that he thought that the truck was speeding.  After their car passed the truck, Helsel heard a crash, even though he did not see the collision occur.  Helsel turned back, and after observing the accident, called 911.  Katrina Helsel's testimony corroborated her husband's testimony in most respects. (Tr. Vol. II, pp. 51-62, 74-81).

Hayes Road was described as a five lane road at the site of the accident.  Two lanes

2

head north, two head south, with one center turn lane. There was a "drizzle type rain" at the time of the accident. (Tr. Vol. I, p. 188).

Clinton Township Police Officer Nicholas Dykas responded to the accident scene and spoke with petitioner. Officer Dykas described petitioner as being incoherent when he spoke to him and testified that petitioner smelled strongly of alcohol. (Tr. Vol. II, pp. 66-67). Officer Dykas later went to the hospital where petitioner had been taken and served petitioner with a search warrant for a blood draw. Officer Dykas transported petitioner's blood sample to the police station.(*Id.* at pp. 71-72). Petitioner's blood alcohol level was 0.17. (Tr. Vol. III, pp. 12-13). A backpack was found in the front passenger area of the truck that petitioner had been driving which contained clothes and a bottle of gin. (Tr. Vol. II, p. 110).

Officer David Coller was the evidence technician at the scene and was also a certified accident reconstructionist. Although Officer Coller could not determine the exact speed of the victim's car and the truck that petitioner was driving, he testified that he was able to determine a range. Officer Coller opined that the minimum speed of the truck that petitioner had been operating was 41.16 miles per hour and the maximum speed was 60.27 miles per hour. Officer Coller testified that his best estimate was that the victim's car was driving at 30 miles per hour and the truck was traveling at 52.50 miles per hour. Officer Coller also believed that the truck did not brake prior to impact, because he could find no skid marks on the road. (Tr. Vol. II, pp. 83-84; 94-95).

Lieutenant Anthony Green was the officer in charge of this case. Lieutenant Green determined that petitioner did not have a valid driver's license at the time of the accident, nor had he ever applied for one. Green also determined that petitioner had a suspended

3

license. (Tr. Vol. II, p. 114).

Petitioner's conviction was affirmed on appeal. *People v. Stewart,* No. 270215

(Mich.Ct.App. September 13, 2007); *lv. den.* 480 Mich. 1074; 744 N.W. 2d 148 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner's conviction is a product of the state trial court abusing its discretion in allowing evidence of Petitioner's uncharged acts of stealing a dump truck.  The application of this evidence and the state court's upholding the judge's ruling demonstrated an unreasonable application of *Huddleston v. U.S.*, 485 U.S. 681 (1988).

II. Petitioner's conviction is constitutionally invalid by prosecution failing to present a sufficient amount of evidence.  The state courts have demonstrated an "unreasonable application" of *Jackson v. Virginia*, 443 U.S. 307 (1979); 28 U.S.C. § 2254(d)(1).

III. Petitioner's constitutional and statutory right(s) to be present at trial and all critical stages of the criminal proceedings and to effective assistance of counsel was violated and Petitioner suffered substantial prejudice as a result. Petitioner was denied federal due process and a fair trial based on the jury contacts/interaction with the court and its ruling on jury questions (while the jury was deliberating) and giving of new supplemental instructions (actually adding a new charge) with him absent from the courtroom. (Fifth, Sixth and Fourteenth[Amendments]).

Petitioner is entitled to a new trial because his constitutional rights, V, VI, and XIV, to confrontation and to be present at this trial, due process, and effective assistance of counsel, and his statutory rights to be present during his trial were violated by the giving of supplemental instructions to the jury outside of his presence.

The trial court reversibly erred by conducting this entire scenario without Petitioner present and without a proper waiver of his constitutional right to be present.

IV. Petitioner's sentence is invalid and is a product of the use of inaccurate information to formulate the guidelines used to score the current sentence. Violation to U.S. Const. Am. VI, XIV.

## II.  Standard of Review

4

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855,

5

1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

        "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so

6

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

### A.  Claim # 1.  The prior bad acts evidence claim.

Petitioner first claims that the trial court erred in permitting the prosecution to introduce evidence that petitioner had stolen the dump truck that he was driving at the time of the collision.  Petitioner claims that this evidence was not admitted for a proper purpose under M.R.E. 404(b), but was used merely to show that petitioner was a bad person. Petitioner further claims that the evidence was more prejudicial than probative.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law);

7

*Dowling v. U.S.*, 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003).

Moreover, it is not clear that the evidence that petitioner complains about would be excluded under 404(b). Background evidence, often referred to as *res gestae*, does not implicate the provisions of 404(b). *United States v. Hardy,* 228 F. 3d 745, 748 (6th Cir. 2000). Background evidence consists of other acts which are "inextricably intertwined" with the charged offenses or those acts, "the telling of which is necessary to complete the story of the charged offense." *Id.* The Sixth Circuit explained that:

> "Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense."
>
> *United States v. Hardy,* 228 F. 3d at 748.

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, evidence that petitioner had stolen the dump truck was "an integral part of his commission of the charged crimes." *Stewart,* Slip. Op. at * 2. Because petitioner's theft of the truck was "inextricably intertwined" with the subsequent collision, the admission of this evidence did not deprive petitioner of a fair trial.

8

Likewise, petitioner's claim that this evidence was irrelevant does not raise due process issues of constitutional magnitude or entitle him to habeas corpus relief. *See Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).  Finally, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002).  Petitioner is not entitled to habeas relief on his first claim.

**B.  Claim # 2.  The sufficiency of evidence claim.**

Petitioner next contends that there was insufficient evidence of malice to support his conviction for second-degree murder.

The Michigan Court of Appeals rejected petitioner's claim:

> On the record before us, we cannot conclude that there was insufficient evidence presented at trial to prove malice beyond a reasonable doubt. Defendant's blood alcohol content level was more than twice the legal limit at the time of the accident.  Defendant was driving a large and cumbersome vehicle in moderately adverse conditions.  He was not authorized to drive the vehicle and took it without permission.  There was a strong inference that defendant was unfamiliar with the vehicle and could not control it. Moreover, defendant never obtained a driver license, and when the accident occurred, defendant was driving in the lanes reserved for traffic traveling in the opposite direction.  Evidence showed that defendant swerved from the northbound lanes into the center turn lane on two or three occasions.  An accident reconstructionist testified that there was no evidence at the scene indicating that defendant had attempted to apply his brakes, and a mechanic who inspected the vehicle found no evidence that the truck was not in proper working order.  Malice may be inferred from evidence that establishes the intent to do an act that is in obvious disregard of life-endangering consequences. Here, the evidence supported a finding that defendant intended to do an act, i.e., drive a large unfamiliar vehicle while under the influence of intoxicants, in wanton and willful disregard of the likelihood that the natural tendency of his behavior would be to cause death or great bodily harm.  Sufficient evidence was presented from which a

9

rational jury could have found defendant guilty of second-degree depraved heart murder.

*Stewart,* Slip. Op. at * 2(internal citations omitted).

In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh,* 567 F. 3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* (*citing United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993)).  Therefore, even if a federal habeas court might have not voted to convict a defendant had it participated in the jury deliberations, it must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution.  Secondly, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown,* 567 F. 3d at 205; *See also Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008).  A habeas court does not substitute its own judgment for that of the finder of fact. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003).   The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state

law." *Jackson*, 443 U.S. at 324 n. 16.

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6ᵗʰ Cir. 2010); *cert. den.* 131 S. Ct. 650 (2010)(citing *People v. Goecke*, 457 Mich. 442 463-64; 579 N.W.2d 868 (1998)).   "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304 (1980)).   Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart,* 595 F. 3d at 658 (quoting *People v. Aldrich*, 246 Mich.App. 101, 123; 631 N.W.2d 67 (2001)).

Petitioner is correct that not every drunk driving case in which a death results constitutes second-degree murder. *See People v. Werner*, 254 Mich. App 528, 533; 659 NW2d 688 (2002).   Instead, to satisfy the malice requirement for second-degree murder, the evidence must show "'a level of misconduct that goes beyond that of drunk driving.'" *Id.* (quoting *Goecke, supra* at 469).   However, when viewed in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to conclude that petitioner acted with malice aforethought, so as to support his conviction for second-degree murder.   Petitioner was intoxicated at the time of the crash, with a blood alcohol level of 0.17, which was over twice the legal limit of a blood alcohol level of 0.08 under Michigan law for drunk driving. See Mich. Comp. Laws 257.625(1)(b).   Petitioner did not have a valid driver's license at the time of the collision.   Petitioner was driving a large

dump truck that he had stolen at the time of the crash.  As the Michigan Court of Appeals noted, there was a strong inference that petitioner did not know how to properly drive this vehicle.  Petitioner swerved from the northbound lanes of Hayes Road into the center turn lane two or three times.  When the accident occurred, petitioner was driving in the lanes reserved for traffic traveling in the opposite direction.  There was some evidence that petitioner may have been speeding, although this evidence was not conclusive.  There was, however, no evidence that petitioner attempted to brake the vehicle or to otherwise avoid the collision.

Numerous cases have held that the malice aforethought required for second-degree murder can be inferred from a defendant's act of driving a motor vehicle erratically while under the influence of liquor or narcotics, particularly at high rates of speed, because such an action evinces a wanton and willful disregard of the likelihood that the natural tendency of such behavior would be to cause death or great bodily harm. *See People v. Goecke*, 457 Mich. at 471-72 (evidence was sufficient to permit a reasonable jury to infer malice to support defendant's conviction for second-degree murder; testimony established that the defendant lived within one mile of the scene of the accident, had a blood-alcohol content of 0.18 percent, drove well in excess of the speed limit, ran a red stoplight, drove through an intersection at a time when he could have seen at least three vehicles properly traveling through the intersection, narrowly missed hitting two cars before hitting the victims' car, and killed two people); *See also Aldrich v. Bock,* 327 F. Supp. 2d 743, 763 (E.D. Mich. 2004)(there was sufficient evidence that petitioner, who was involved in automobile collision which resulted in victim's death, acted with malice aforethought to submit second degree murder charge to the jury; from evidence of alcohol impairment and

12

drag racing at excessive rates of speed, jury could conclude, beyond a reasonable doubt, that petitioner intended to create a very high risk of death or great bodily harm with knowledge that such was likely to result); *Hoskinson v. Bock*, 8 Fed. Appx. 558, 560-61 (6th Cir. 2001)(evidence of malice was sufficient to support conviction for second-degree murder, in prosecution of petitioner who was driving while intoxicated; petitioner was highly intoxicated when he left bar, having twice backed into same parked vehicle, his passengers advised him to slow down, but petitioner drove at high rate of speed through residential neighborhood, swerved to avoid hitting a stopped car, ran through a stop sign, and nearly hit another car, before driving over curb and striking victim, and then continued to drive for several blocks, even though passengers had jumped from moving vehicle and informed him that he had hit child); [1] *People v. Mayhew*, 236 Mich.App. 112, 125-26; 600 N.W.2d 370 (1999)(evidence that defendant had been warned several hours earlier that loose sway bar on his vehicle could cause vehicle to fishtail and lose control, but had nonetheless driven at excessive speeds while weaving through traffic and cutting off other drivers, and that fatal accident occurred when defendant's vehicle fishtailed as he turned too sharply to get into another lane, was sufficient to establish malice on part of defendant, and thus to support charge for second degree murder); *People v. Miller,* 198 Mich.App. 494, 498; 499 N.W.2d 373 (1993)(evidence supported conviction for second-degree murder; after arguing with passenger, who was his girlfriend, because she wanted to leave a party, intoxicated defendant endeavored to take her home and went speeding down

---

[1]   The petitioner in *Hoskinson* had been one of several defendants whose cases had been consolidated in *People v. Goecke, supra.* The Court cites Hoskinson's federal habeas case separately to demonstrate that a similar sufficiency of evidence challenge as the one brought by petitioner has been rejected on habeas review by the Sixth Circuit.

highway, straddling lanes and running red lights, before colliding with another vehicle).

In the present case, petitioner was operating a large truck with a blood alcohol level over twice the legal limit. Petitioner swerved into the center lane two to three times. Petitioner was driving south in the northbound lane when he collided with the victim. Petitioner did not have a valid driver's license. There was some evidence that petitioner may have exceeded the speed limit. There is no evidence that petitioner attempted to brake the vehicle or to avoid the crash. In light of this evidence, the Michigan Court of Appeals reasonably determined that a rational trier of fact could have found the elements of second degree murder, particularly the element of malice, beyond a reasonable doubt. *Hoskinson,* 8 Fed. Appx. at 560-61.

Petitioner further contends that there was insufficient evidence of malice due to the fact that the victim was not wearing a seatbelt at the time of the collision. However, contributory negligence is not a defense to homicide in Michigan. *See People v. Tims*, 449 Mich. 83, 95-98; 534 N.W. 2d 675 (1995)(contributory negligence not a defense to involuntary manslaughter); *Werner,* 254 Mich. App. at 542-43(contributory negligence not a defense to second-degree murder involving a drunk driving). Therefore, the fact that the victim was not wearing a seat belt at the time of the accident would not absolve petitioner of his culpability under Michigan's second-degree murder statute.

To the extent that petitioner challenges the credibility of the police or the lay witnesses, he is not entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002)(internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal

14

habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000).   The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*  Petitioner is not entitled to relief on his second claim.

### C.  Claim # 3.  The absence from a critical stage claim.

Petitioner next claims that he was denied his right to be present during a critical stage of the trial because he was absent when the trial judge, in response to questions from the jurors, gave supplemental instructions to the jury.

In rejecting this claim, the Michigan Court of Appeals noted that petitioner did not dispute the accuracy of the instructions given by the judge nor did he offer any argument as to how his presence would have affected the trial court's supplemental instructions. The Michigan Court of Appeals concluded that petitioner's absence from the courtroom during the reading of the supplemental instructions was not prejudicial to him. *Stewart,* Slip. Op. at * 3-4.

A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987).  This right, however, "is not absolute, but exists only when 'his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *U.S. v. Henderson*, 626 F. 3d 326, 343 (6th Cir. 2010)(quoting *United States v. Brika*, 416 F.3d 514, 526 (6th Cir.2005)(quoting *Kentucky v. Stincer*, 482 U.S. at 745).  "In other words, the defendant's presence is not guaranteed when it would be 'useless,' but only 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Id.* (quoting *Brika,* 416 F. 3d at 526).  Indeed, the U.S. Constitution "does not require the defendant to be present when his

15

2:09-cv-11664-NGE-CEB   Doc # 15   Filed 03/08/11   Pg 16 of 20   Pg ID 843

'presence would be useless, or the benefit but a shadow.'" *Cathron v. Jones,* 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002)(quoting *Snyder v. Massachusetts,* 291 U.S. 97, 106-107 (1934); *overruled on other grds by Malloy v. Hogan,* 378 U.S. 1 (1964)).  A defendant's presence at a hearing is "largely a matter of form" when a defendant's lawyer is present at proceedings which raise largely legal issues. *Cathron,* 190 F. Supp. 2d at 1001-1002 (*quoting Fisher v. Roe,* 263 F. 3d 906, 916 (9th Cir. 2001)).

In *Brika*, the Sixth Circuit held that the defendant's absence where "the judge did nothing more than give the jurors a technical and perfunctory rereading or explanation of previously-given instructions", did not deprive the defendant of a fair trial. *Id.,* 416 F. 3d at 527.

In this case, petitioner has failed to show how his absence from court when the judge gave supplemental jury instructions to the jury on the elements of second-degree murder and involuntary manslaughter prejudiced him or deprived him of a fair trial. Petitioner is not entitled to habeas relief on his third claim.

### D.  Claim # 4.  The sentencing claim.

Petitioner finally claims that the trial court used inaccurate information in formulating his sentencing guidelines.

A criminal defendant possesses a constitutional right not to be sentenced on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948).  In order to prevail on a claim that a trial court relied on inaccurate information at sentencing, a habeas petitioner must demonstrate that the sentencing court relied upon this information and that

16

it was materially false. *Collins v. Buchkoe*, 493 F. 2d 343, 345-46 (6th Cir. 1974).  Where a petitioner fails to demonstrate in his petition that the sentencing court relied upon materially false information in imposing sentence, the claim is without merit. *See Thomas v. Foltz*, 654 F. Supp. 105, 108 (E.D. Mich. 1987).

In this case, petitioner does not specify the nature of the inaccurate information that he claims was used by the sentencing court used in imposing sentence.  Petitioner's unsupported claim that the trial court used incorrect information to fashion his sentence is an insufficient basis for habeas relief. *See Walker v. Warden Winn Correctional Center,* 191 Fed.Appx. 328, 330 (5th Cir. 2006).

To the extent that petitioner claims that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines, this is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also Haskell v. Berghuis,* 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010)*; Adams v. Burt,* 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007)*; McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)).

Lastly, petitioner appears to contend that the trial court judge violated his Sixth Amendment rights by using factors to score his sentencing guidelines which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner. Petitioner believes that *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New*

17

*Jersey*, 530 U.S. 466, 490 (2000), support his position.

The holdings in *Apprendi* and *Blakely* do not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum. *See Chontos v. Berghuis*, 585 F. 3d 1000, 1002 (6th Cir. 2009); *See also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010)(the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing). The claim that Michigan's sentencing guideline system, wherein judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos, supra* at 1002 ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* [536 U.S. 545 (2002)] tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does not violate petitioner's due process rights or his right to a jury trial. *Montes,* 599 F. 3d at 497. Petitioner is not entitled to habeas relief on his *Blakely* claim. *Id.*

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability,

18

a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *Dell,* 194 F. Supp. 2d at 659. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  March 8, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 8, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager